Before you, you have the 1st District, 2nd Division Appellate Court consisting of myself, Justice Smith, Justice Levin, and Justice Puchinsky. Our procedure is as follows. First, the appellant will present their case without interruption for 12-15 minutes, and then we will ask questions. After that, the appellee will make their presentation, same way, not interrupted, and then after that, the appellant will be able to close. If you're ready, we can proceed. The case is People v. George James, 1-18-0509. You may go ahead. May it please the Court. My name is Allison Shaw with the Office of the State Appellate Defender, and I represent George James. In this case, while George James was over a city block away, two officers entered a garage he had been seen in, searched a blue drum, removed a glove, and searched it, removing concealed items. All of this occurred without a warrant, in violation of the Fourth Amendment. Given this, Council should have filed a motion to suppress, and in failing to do so, rendered ineffective assistance of Council. It is well settled that, given the protections of the Fourth Amendment, a warrantless search or seizure is per se unreasonable, unless it falls within an exception to the warrant requirement. Here, the warrantless search and seizure of James' property fell under no such exception. Turning first to whether this was a valid search incident to arrest, simply put, this exception does not apply. The purpose of this exception is to prevent an arrestee from concealing or destroying evidence, or to protect officers from weapons the arrestee might seek to use. This does not apply to a situation where the arrestee is over a city block away from the location being searched. Moving on to the plain view exception, again, or also this, the glove itself was not in plain view. It was inside the blue drum, and most significantly, it had to be manipulated in order to see the items concealed within it. Moreover, for the plain view exception to apply, the incriminating character of the object must be immediately apparent. That's not the case here, where it was not something that it could be, the glove was not something that you could look at and immediately know that this was a single-use object that was only used for containing contraband. Moving on to the exigent circumstances exception, importantly, the state concedes this in that they don't argue that there were any exigent circumstances. They simply assert that they were not needed here. Again, returning to the search incident to arrest exception, which as I've mentioned, did not apply. Again, for this, the purpose behind this exception is to avoid impediments to investigation or to avoid the destruction or concealment of the evidence. There is no such risk in this case here. One of the most significant things about this case is that the state itself acknowledges that officers could have secured the container and obtained a warrant, which brings us to the inevitable discovery doctrine. Again, this exception does not apply because simply allowing the police to justify a warrantless search and seizure and then search by showing they could have subsequently obtained a warrant would render warrants superfluous. It's important to note that the warrant requirement is not an administrative inconvenience. Judicial oversight is necessary, and our forefathers felt that this was a vital and crucial right, which is why they wrote it into the Bill of Rights. Turning to the second issue in the case on prosecutorial misconduct, just to put it briefly, in closing argument to the jury, the prosecutor engaged in multiple instances of prosecutorial misconduct. First, it created and stressed an improper us-versus-them mentality, stressing to the jury the distinction between James as a criminal and the jurors and police officers as upstanding, law-abiding citizens. These comments were particularly prejudicial because the entirety of this case rested on the testimony and therefore credibility of Officer Duran. Moreover, the state engaged in further improper argument in arguing multiple facts not in evidence, including the fact that the officer could not pull out his own personal cell phone and use it for police work, which was not based on any testimony, that the buyers were not stopped because word travels fast on the street, and arguing that officer safety would be threatened, again, this was not based on any evidence, and finally, stating that fingerprint evidence was not necessary in this case. I guess that's, if there are any questions, I'm happy to answer. Yeah, I have a few. Let's just take something out of play here. You're only challenging the search of the glove inside the garage and not the search of the defendant himself at the time  Yes, just the search of the glove. And that was when he was about a block away from the garage in question, right? Yes. Going to the garage, you know, there are a lot of interesting Fourth Amendment cases and search and seizure in terms of things like containers and luggage and whatnot. But in terms of the maintain that garage, isn't that correct? Correct. And that's part of the reason we're not, I'm not challenging the search, you know, that the officers entered the garage. It's the issue here is the warrantless seizure, like the seizure of the glove itself out of the blue drum, and then the search of the glove itself, removing the items from within it to determine that it contained, the glove itself contained contraband. Correct. Are you admitting then that this defendant had no ownership or privacy interest in the garage itself? No, I think what your honor mentioned earlier is the case is we don't have a developed record because there was, because this wasn't developed and below that we don't have the evidence to know that it was, that what the evidence shows is that he considered it his workplace, that it was a place that he returned to every day, that it was a place that he felt secure in, that he kept his position, sorry, excuse me, kept his possessions private in. But as for ownership of the garage itself, there's no evidence about that, that speaks to that. Okay, so isn't that something then that should be addressed on collateral review rather than direct appeal? Again, the issue here is not, I think that's sort of getting aside, the issue here is not, is what we can see definitively from the record is that even if the police had the authority, were able to enter the garage, even if the police were able to go and search the blue drum under any other exception that goes to the warrant retirement, even if all of that were the case, the fact of the matter is, is that they could not search the glove it sees and search the glove itself. And that's the issue here, not, and certainly the record is more than well enough developed on the issue of the privacy interest in the glove and that council should have filed a motion to suppress. And I think moreover, putting this to something that gets into collateral review to say that this is something that should be addressed on collateral review would put us in a situation where if we were not to raise this on appeal, and there's facts in the record that you're relying on, then later down the road, the argument would be made in a post-conviction petition that it had been waived because it should have been brought up on direct appeal because of the fact that it is, you know, there is the testimony on the record about what they observed, what they had to do for the search, the fact they did not get a warrant and their procedures that the officers followed. And moreover, ineffective assistance of council, I think is a very well settled issue to be brought on direct appeal. What about the, you know, there's, I was talking about interesting cases on fourth amendment, the Chadwick case is a case that was referred to in the briefs here, involving a locker. And there are a number of cases out there about containers of some kind, whether it's luggage or like the Cregan case that we have here in Illinois. Don't you think, do you think that a glove like this is equivalent to containers, luggage, things like that? And if so, why? I think it is, I think it's because it's a, it's a closed container. He's using it as a, as something to, you know, contain his possessions. He's maintaining that privacy interest in it. He's keeping it private. I think it's well within the human experience to use containers to contain things that might not be so readily apparent as a foot pack, but it's well within the human experience to use things that are a little bit unusual. For example, going to the beach and you take your wallet and cell phone out of your pocket, you put it, many people will put it in a shoe. It's similar to a glove. It has an opening at one end. It's not something that is normally considered a container, but it's something that people use to conceal and contain their possessions until they can return to them. And I think that that's what James did here. He was using this glove as a container to conceal and contain his possessions. He was repeatedly returning to it, taking pains to ensure that it was, everything was put back in, that it was concealed again. So yes, I do think that while it's not a footlocker, it certainly does meet, does function as a container that he had a privacy interest in under the Fourth Amendment. I think that's a bit of a stretch, but I appreciate the argument. No more questions for me. Any other questions? All right, Brian, you may proceed. Brian, we're not hearing you. Am I on now? Yes. Thank you. Apologize, your honors. This is the state's attorney, Brian Hodes, on behalf of the people of the state of Illinois. I want to begin with a bit of a mea here. We want to concede that the argument with respect to the search and seizure is wrong based on our review of the law in this area. This wasn't a lawful search incident to arrest. Nonetheless, I want to rely on the other argument, which I believe Justice Lavin was touching on, which was that a council could not have pursued a motion to suppress based on the fact that the spending could not have established a lack of protectable interest or expectation of privacy, and also because probable cause existed. That was on pages 18 through 22 of our initial brief. This whole case has to be examined, the first argument I'm dealing with here, has to be examined through the prism of ineffective assistance of counsel, which means that the defendant has to establish on a direct appeal sufficient evidence to adjudicate counsel ineffective on direct appeal. We appreciate that counsel has to raise this argument on direct appeal under a Supreme Court decision, but that doesn't mean that it has to necessarily be found based on where the record is not sufficiently developed to adjudicate counsel ineffective. Here, there is just not enough here under any way to adjudicate counsel ineffective. Defendant cannot possibly meet his burden and show that his counsel was ineffective for failing to litigate a motion to suppress under either prong of Strickland. A failure to litigate a motion to suppress under Strickland's performance prong would be futile. If the motion would be futile, then it's a matter of trial strategy to file the motion and counsel's decisions about whether or not to litigate such a motion is always accorded great deference. Further, with respect to Strickland's prejudice prong, the defendant must demonstrate that the unargued motion is meritorious. That's under our Illinois Supreme Court's decision in Henderson, and there's no way the defendant can demonstrate that based on the extant record here. In fact, the record vindicates the presumption that counsel was, in fact, reasonably professional in deciding not to litigate such a motion. First, counsel could not have met the burden of establishing the defendant had a protectable Fourth Amendment interest in this case, because there was no ownership interest the defendant had in the garage where he abandoned this glove on top of the open, essentially it's a garbage can, but we'll say it's a large blue drum line. It was about 60 gallons, and also the police had probable cause to enter this open garage and then to seize the glove after they observed defendant conduct three drug transactions, three narcotics transactions. Based on this, counsel would have known that such a motion would have been futile, at least based on the evidence we have here. In Rosenberg, our Supreme Court identified six factors that courts consider to determine whether or not a defendant has a legitimate expectation of privacy in place of property seized, so that such a motion to suppress would even be viable. First one of these is property ownership. Well, there was no property ownership here. Defendant didn't own the garage. Second one is whether defendant was legitimately present in the area searched. There's no proof that defendant actually did. This was where defendant was and whether the defendant can legitimately keep someone in or out of the garage. The garage was open and legitimately excused to prevent or control the property. No proof of that, and a subjective expectation of privacy in the property. No proof of that. Counsel would have considered these factors and professionally reasonable counsel would have recognized that she could not meet her burden and could not demonstrate a reasonable expectation of privacy in this case in the open garage. She would have also recognized that the officers had probable cause to go in after having witnessed the three observed, the surveillance officers, there were three defendants engaging in three narcotic transactions and then leave the glove or the piece of cloth is what the officer described out in the open on top of this open container, which did in fact have narcotics that was packaged to be sold. Essentially, it was a stash in plain view. So under these facts, counsel cannot be found adjudicated to be ineffective at this stage. For purposes of the fourth amendment, counsel cannot be found ineffective for failing to litigate a meritless motion and defendant does not have enough here to prove that there was a meritorious motion that counsel could have litigated. Okay, I'll move on to the second argument which counsel has touched on, which essentially is that the first of all, the claims that the prosecutor made erroneous arguments in closing. All these claims were, none of these claims are properly preserved, so they all have to be raised in plain error. Our position is that there were no errors, plain or otherwise, and if there were no errors, there were no plain errors. A fair reading of the entire record shows that the stress that the jury was to decide based on the facts. In fact, both prosecutors ended their respective arguments by telling the jury it was their job. Let's see, your job is to take the evidence that was presented through the testimony of the witnesses and exhibit and apply the facts to the case you know or you were going to receive. That's essentially what both prosecutors said at the end. They didn't create an improper us versus them thing by telling the jurors they had to be scared of defendant, that the defendant was a dangerous man by invoking race or anything like that. They properly characterized him as a drug dealer, okay, based on the facts of the case. And the other statements were properly based on the evidence or reasonable inferences drawn there from. About the officer's use of, why he didn't use his cell phone for personal use, why there were no fingerprints taken, and finally, why they didn't arrest the buyers in the case. I guess I'll move on to, so there was no error, let alone plain error. I'll move on to the questions now. I'm sure your honors have some. Yeah, I do. So let's talk about the garage. You said on several occasions that the garage was open. What does that mean? Open in what sense? Was the door unlocked or was the door either the entrance door or the overhead door? All the testimony was that the door was, that it was just open. You could just walk in and out. That was when the defendant walked in and out, and that was when the officers walked in and out. And there was no testimony that anyone, as to who owned the garage. It was just this open garage. Okay. And you mentioned in your argument, and I give you credit for doing this, that you're sort of, you're abandoning the search incident to arrest aspect that was raised in the brief. Definitely. But there's another abandonment issue here. What about the issue of whether or not the defendant had abandoned any possessory interest in this glove here? What's the state's position on that? Well, he, well, I mean, he had constructive possession of it, obviously, but he didn't, I guess in that, so in that sense, he didn't abandon it, but he did leave it there. So I guess that's how I would frame it. I'm not sure how else to frame it. And at trial, were there photographs of the quote glove or the container that it was quote stored in? There were photographs introduced, and I want to point out that I want to go back to something you asked about the abandonment. The inquiry is whether the and the attorney could definitely could believe it was abandoned or that she, the defense attorney couldn't prove definitively for purposes of emotion, but it hadn't been abandoned because that's really what she would have had to have done to prevail on a motion to suppress. I'm sorry. I missed your, your question is yes, there were photographs. They were introduced into evidence and they were in fact with the jury of all these things. In fact, I think the specific things may have gone bad. Any further questions? I'm good. Allison? No. If there are no other questions, then I would respectfully request that this court affirm defendant's convictions for the reasons stated today and the reasons set forth in our relying upon. Thank you. Thank you. Just very briefly. First on the issue of abandonment that was brought up again, as I, as I stated before, this glove was not abandoned. He returned to it repeatedly and then he walked away to go to the corner store. This is again, there was ample testimony that this was his workplace. More testified that the two of them worked in this garage every single day together. They worked there all day long and was entirely, I think it's entirely to be expected that an individual who leaves a, you know, personal possession in a workplace and then leaves that workplace to run to the store is still maintaining ownership and possessory interest in that, in that item that they have left in their workplace. There was absolutely no evidence that this was abandoned. If anything, the test, the testimony established that he was showing that he was repeatedly returning to it, taking pains to make sure that it is, that it was private. Second of all, moving to Justice Levin's questions about the container, the U.S. Supreme Court has actually spoken on this distinction between worthy and unworthy containers. And in a case called U.S. versus Ross, they actually specifically stressed that even someone who carries their possessions knotted in a, in a paper bag or a knotted scarf could claim an equal right to a possessor, you know, to conceal his possessions as someone who carried them in a, in a locked, that the lease or locked container. And I think that's the it is an unusual way to carry or conceal a possession, but just that in and of itself, when someone has, when he has demonstrated his ownership, that he was intending to keep things private in there, simply because the container is unusual does not make it not, does not make it unworthy. And it does not make it not a container that has a privacy interest attached to it. And then finally, I think what's really important to note here is that there, there's a lot of discussion about the officers having probable cause to enter the garage, to, to view these things and see them. But what's important to note is that what's written into the fourth amendment is that what the officers should have done in this case that they easily could have done because they had James in custody a block away, they could have secured the garage and then gone and obtained a warrant. And they chose not to, they instead chose for expediency or convenience or whatever, they chose to instead view it as, as an administrative inconvenience to their investigation, not go get a warrant, not, not get a warrant and just search the garage, search the season, search the glove without it. And I think that's the crucial thing to remember here is that they needed an exception to be able to do that. And there is no valid justifiable exception to the fourth amendment as it pertains to the glove in this case. If there are no further questions, I ask the court to grant the relief requested. Thank you. Any questions? No questions. All right. I guess that's it. You both made very good and interesting arguments. We'll review it and let you know what the results are. Thank you for your time.